FILED

JAN 2 4 2022

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF VIRGINIA
# NORFOLK DIVISION

------------------------------------------------x

**JULIE MORGAN,**                             |    Civil Action No.

        **Plaintiff,**                |    2:22cv35

**v.**                                        |

**JAMES O. BROCCOLETTI,**                     |

**Zoby & Broccoletti, PC**                    |

        **Defendants.**              |

                                    |

------------------------------------------------x

## COMPLAINT FOR A CIVIL CASE ALLEGING FRAUD
### (28 U.S.C. § 1332; Diversity of Citizenship)

### I.   The Parties to This Complaint

#### A.   The Plaintiff

1.  Plaintiff Julie Morgan (hereinafter "Plaintiff"), in Pro Se, resident of the Commonwealth of Kentucky, herein files this Complaint for Fraud and Intentional and Negligent Infliction of Emotional Distress.  Plaintiff requests this Honorable Court grant her the latitude of a Pro Se litigant until Counsel enters an appearance.  Plaintiff was unable through the exercise of diligence to obtain counsel to represent her.

#### B.   The Defendant(s)

2. Defendants: James O. Broccoletti (hereinafter "Defendant"), a citizen of the Commonwealth of Virginia, who is a criminal defense attorney practicing in the Commonwealth of Virginia, and who is the principal and registered agent (RA) of his law firm, Zoby &

Broccoletti, PC; and respondeat superior through vicarious liability, Mr. Broccoletti's law firm, Zoby & Broccoletti, PC, which is incorporated under the laws of the Commonwealth of Virginia, has its principal place of business in the Commonwealth of Virginia, and whose business address is 6663 STONEY POINT SOUTH, NORFOLK, VA, 23502-0000, USA.

## II.    Basis for Jurisdiction

3. This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332 because this is a civil action in which the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States: Plaintiff is a citizen and resident of the Commonwealth of Kentucky; Defendant is a resident of the Commonwealth of Virginia, and his law firm is registered, incorporated under the laws of, and has its principal place of business in, the Commonwealth of Virginia.

4. This Court has personal jurisdiction over Defendant James O. Broccoletti because he is a resident of the Commonwealth of Virginia and the causes of action alleged against him arise from his commission of a tortious act within Virginia.

5. This Court has personal jurisdiction over Defendant-by-vicarious-liability law firm Zoby & Broccoletti, PC, because it is incorporated under the laws of, and its principal place of business is in, the Commonwealth of Virginia, and Defendant acted within the course and scope of his duties as an agent of the law firm when he committed the tortious acts complained of herein.

6. Venue is proper pursuant to 28 U.S.C. 1391(b) because the events giving rise to the allegations in this complaint occurred in this district.

## III.    Cause of This Action

7. This action arises out of the fraudulent obtaining of money under false pretenses (in violation of Section 18.2-178, Virginia Statutes and in violation of the Virginia Consumer Protection Act) by way of a cross-state credit card payment (in violation of Section 18.2-152.3, Virginia Statutes, and 18 U.S. Code Section 1343) from a resident of Kentucky to a professional

services corporation registered in Virginia, purportedly for professional legal services to be rendered in Virginia, specifically, criminal defense representation for Plaintiff's brother, in the Chesapeake Circuit Court, case nos CR19001873-00;01;02, and Chesapeake General District Court case nos: GC19002870-00;01, hereinafter collectively "the referenced case".

8. The referenced case started as domestic dispute arising between a father, his daughter, and her husband (Exhibit 1), but became a major controversy when Plaintiff discovered a preposterous rape indictment on the record (Exhibit 2). Plaintiff sought to find a new lawyer for her brother, to obtain truth and justice in the matter.

9. This is a complaint for Fraud and Intentional and Negligent Infliction of Emotional Distress, caused by Defendant's conduct in offering, for money, to provide professional legal defense services to Plaintiff's brother, under knowing and deliberate false pretenses, with intent to defraud Plaintiff and with present intent not to perform the service offered.

10. Defendant represented to Plaintiff (i) that he was familiar with the referenced case, (ii) that he had spoken with "another family member" previously regarding the referenced case, and (iii) that he believed it was "wrong" that there was now a rape indictment in the referenced case.

11. Plaintiff relied on these representations in her decision to to pay Defendant money and to rely on him for the incredible power, authority, and responsibility of legal representation of a beloved brother, to her and her brother's severe detriment. Defendant obtained a payment of $10,000 from the Plaintiff.

12. Then, in the very next discussion of the referenced case, on Defendant shouted down Plaintiff, and boldly denied all of his previous representations, including denial of the very reality of the rape indictment in the referenced case, despite evidence of it in the records of both the Chesapeake Circuit Court, and the Chesapeake General District Court.

13. Defendant repeated these denials in email exchanges with Plaintiff in August 2020.

14. Defendant continuously refused effective counsel for nearly two years and up to present time. His only advisement has been persistent pressure to accept a plea deal containing an unspecified charge with a probable sentence of 5 years and 4 months in prison. Defendant prevented the hearing of a bond review request, and prevented the case from going to trial,

through his excessive repeated motions for, or agreements to, mental capacity evaluations and continuances.

15. Defendant took no action to reveal the misconduct by the prosecution and/or a previous defense attorney regarding the preposterous rape indictment entered into the record of the referenced case, as required by the Himmel Doctrine.

16. As a result, under Defendant's oppressive representation, Plaintiff's brother has continued to be detained in pretrial incarceration without bail for 22 more months at the time of this filing, (in addition to seven months in jail before Defendant took the case).

17. Plaintiff has been burdened with working full-time on the referenced case for nearly two years, and with financially supporting her brother, and suffers from constant worry and distress.

### A.   Background: the Referenced Case

18. On May 3, 2019, Plaintiff's brother, Mr. John Joseph Morgan III, went to his daughter's house in Chesapeake, Virginia, to confront his son-in-law, Mr. Brantley Zachary, regarding years of ongoing domestic violence against Mr. Morgan's daughter, Mrs. Alison Zachary (née Morgan).

19. Mr. Zachary struck Mr. Morgan on the head with a hammer, inflicting a traumatic brain injury. Mrs. Zachary phoned 911. The police arrived, and Mr. Morgan was transported by ambulance to Chesapeake Regional Hospital.

20. Mr. and Mrs. Zachary reported to the police that Mr. Morgan had sent a text message earlier that evening in which he threatened to kill Mr. Zachary, and that he had broken into their home and wielded a knife, and that Mr. Zachary acted in self-defense when he struck his father-in-law in the head with a hammer. They presented a dubious text message and a cleaned knife as evidence.

21. Mrs. Zachary was the sole beneficiary of her father's, Mr. Morgan's, TSP (Federal Thrift Savings Plan) retirement account worth well over $500,000 at the time. Mr. Morgan's long-term now ex-girlfriend, Kathy Coykendall, who had access to his phone and was set to testify against Mr. Morgan, jointly owned their fully-paid beach-side condominium worth over $300,000.

4

22. On May 8, 2019, Mr. Morgan was arrested on charges of Armed Burglary with Intent to Murder (under Va. Code § 18.2-90), and Attempted Malicious Wounding (under Va. Code § 18.2-51).

23. On May 9, 2019, the referenced case was initiated in the Chesapeake General District Court with a public defender assigned. Mr. Morgan did not receive a disability advocate or accommodation appropriate to his obviously disabled condition, as he was in a wheel chair, in a hospital gown, and suffering from mental impairment due to the traumatic brain injury he was then suffering from.

24. In May or June 2019, Bond was denied.

25. In June or July 2019, with assistance from Ms. Coykendall, Mr. Morgan hired private attorney, Mr. Robert Wegman as his defense counsel.

26. On October 10, 2019, under Mr. Robert Wegman, Mr. Morgan's <u>preliminary hearing was waived</u> under controversial circumstances, in which it appears Mr. Morgan received absolutely nothing in exchange for waiving his preliminary hearing, and did not receive copies of documents he specifically requested regarding the 18.2-90 charge.

27. On October 11, 2019, the case entered the Chesapeake Circuit Court through receipt of a "GDC e-Record."

28. On November 6, 2019, three Grand Jury indictment charges were issued.

29. In November of 2019, Mr. Morgan fired his attorney (Mr. Robert Wegman), after much dispute regarding bond, the charges, the plea deal, the evidence, the preliminary hearing waiver, and other significant matters in the referenced case. In December of 2019, the referenced case was assigned to it's fourth defense counsel, another public defender.

30. In November of 2019, after Mr. Morgan had been held in pretrial incarceration for six months, his long time girlfriend of 28 years, Ms. Coykendall, entirely abandoned Mr. Morgan, leaving him with no one "on the outside," after having "maxed out" his credit card with over $25,000 in charges, and having sold one of his vehicles. Ms. Coykendall had been working closely with the defense attorney (Mr. Wegman) and with the prosecution, and was set to be a primary witness against Mr. Morgan.

31. In December of 2019, Plaintiff, decided to visit her brother during the Christmas holiday season. When Plaintiff informed Ms. Coykendall of this intention to travel to Virginia, Ms. Coykendall objected, and uncharacteristically refused to grant Plaintiff any assistance or lodging. Ms. Coykendall argued that Plaintiff should wait until after Mr. Morgan accepted a deal at a hearing scheduled for January 6, 2020. Plaintiff complied.

32. On January 1, 2020, Plaintiff made jail phone contact with Mr. Morgan and was deeply alarmed at how distressed and hopeless he sounded. Mr. Morgan stated that he was so beaten down that he had decided to take the plea deal at the next hearing, which was scheduled for January 6, 2020. However, the January 6 2020 hearing was continued.

33. On January 12, 2020, Plaintiff visited the official web site of the Chesapeake Circuit Court, and looked up the actual charges her brother was facing in the criminal court. Plaintiff was very deeply shocked and disturbed to there discover a rape indictment against her brother. Plaintiff called the Hampton Roads Regional Jail, where her brother was held in pretrial incarceration. The information line at the jail recited and confirmed the rape charge. Plaintiff later checked the website of the Chesapeake General District Court and found the rape charge there as well.

34. Plaintiff then informed other family members of the rape charge/indictment. This resulted in hostile messages in mid-January 2020 from accusers Ms. Coykendall and Mrs. Zachary, including the threat of filing a PPO against Plaintiff (even though Plaintiff lives 600 miles away in another state and had been polite).

35. After Plaintiff confronted Ms. Coykendall regarding the rape indictment, Ms. Coykendall withdrew from the witness list, forced the partition and sale of the condo she jointly owned with Mr. Morgan (in July 2020, in Virginia Beach Circuit Court case no. CL20-4972), and went into hiding.

36. On January 13, 2020, during a jail phone call, Plaintiff informed her brother, Mr. Morgan, of the rape indictment and grand jury hearing which she had discovered from the referenced case's court's web site, as described supra. Mr. Morgan was surprised and confused by this news. He was not informed that there had been a Grand Jury hearing and could not

believe the rape charge/indictment was real. Plaintiff decided to help Mr. Morgan to find a new lawyer for his defense.

### B.    Facts of This Claim

#### 1.    False Misrepresentations and Obtaining of Money

37. Plaintiff contacted three reputable attorneys in the Chesapeake, Virginia area, to discuss the referenced case and inquire about legal representation of her brother, Mr. Morgan. Plaintiff contemporaneously made written notes with dates and times during all phone discussions with lawyers and agencies in her log of contacts, and also often discussed material facts as they developed, with limited friends in person and in text messages, and with her brother on recorded jail phone calls.

38. On January 24, 2020, at 11:54 a.m., Plaintiff spoke with Ms. Theresa Campbell at the office of "Zoby, Broccoletti, and Normile," and gave a description of the referenced case. At 4:34 p.m., Ms. Campbell called Plaintiff back, and stated that: (i) she had discussed the case with Mr. Broccoletti, (ii) "Mr. Broccoletti had previously met with another family member," on July 22, 2019, (iii) Mr. Broccoletti had looked up and seen the charges which Plaintiff had expressed outrage about, and (iv) Mr. Broccoletti had said, "If she's doing that now, that's wrong."

39. Based on the information in the above paragraph, and on Defendant's prominent high reputation (described infra), Plaintiff decided to pay Defendant, Mr. James O. Broccoletti, to represent her brother in the referenced case.

40. On January 31, 2020 at 4:10 p.m., via telephone call with Ms. Campbell, Plaintiff paid $10,000, using her credit card, to Mr. Broccoletti's law firm.

41. As described infra, the next time Plaintiff spoke with Defendant, Defendant denied each of his previous representations described supra, including repeatedly denying the reality of the rape indictment.

#### 2.    Defendant's False Misrepresentations and Evasion in Next Conversation

42. On February 11, 2020, Plaintiff phoned Defendant's office to request a conference with Defendant regarding the plan for the defense of the referenced case and the misconduct issues raised by the rape indictment. Plaintiff also requested to include on the conference call her

longtime friend, Mrs. Renee Morgan (who is a sister-in-law through a different brother), which Defendant agreed to.

43.  On February 17, 2020, the conference call took place with Defendant, Plaintiff, and Mrs. Renee Morgan in attendance.  Plaintiff's first question was about the rape indictment.  Defendant aggressively shouted three times in a row, "It's not rape!" and changed the topic.

44.  Plaintiff was shocked and unprepared for this declaration and conduct by the Defendant, because it was completely contradictory to Defendant's previous statements, and contradictory to information available in the public record of two courts, namely Chesapeake General District Court and Chesapeake Circuit Court.

45.  Plaintiff then asked if there had been a grand jury, to which Defendant shouted, "yes there was a grand jury!" and changed the topic. Plaintiff asked about a knife that had been presented into evidence in the case.  Again Defendant shouted and and changed the topic, cutting off any questions Plaintiff tried to ask about the knife.

46.  Defendant also stated that he had "never met any of these people before," contradicting his previous representation that "another family member" had met with him on July 22, 2019 about the referenced case.

47.  Plaintiff was too shocked to do any more than maintain professional manners, and the conference call ended.

48.  After the call, Plaintiff was bewildered, and could not mentally process or make sense of what had happened during the conference call.  The following day, Plaintiff spoke with Mrs. Morgan who had been on the call, to review the call and discuss impressions.

49.  Over the next several days, Plaintiff was extremely distressed and shocked by her suspicion and uncertainty that Defendant, a highly regarded, prominent attorney, had been intentionally, recklessly, ruthlessly untruthful about such a serious matter.  Plaintiff was very fearful that that her brother would go to hard prison on a false rape charge where he would be subject to horrifying abuse, and might die in prison in an unthinkable manner.

### 3.   Confrontation

50.  On Thursday, February 20, 2020, three days after the conference call, Plaintiff checked the court website and noted that a trial was scheduled for the following Monday, February 24, 2020.

51.  Plaintiff phoned Defendant's office Thursday, February 20, 2020 at 10:13 a.m.  Unable to reach Defendant directly, Plaintiff left a message that Plaintiff was aware that a trial was scheduled on Monday, and that "if nobody shows up, there will be repercussions."  Shortly afterwards, Defendant phoned Plaintiff and expressed his displeasure with Plaintiff's message. Plaintiff tried to discuss the reasons for her concern, but Defendant interrupted and argued that Mr. Morgan should take the plea deal, and again used bullying tactics by interrupting Plaintiff and shouting, "Twenty years!  Twenty years!  Twenty years!" which was the high end of time that Plaintiff's brother was being threatened to go to prison for.  Plaintiff responded, "I can shout too, I can shout too, I can shout too,"  then explained that the "inconsistencies" in Defendant's statements regarding his beliefs and intentions, and regarding previously meeting "another family member" made it "reasonable" for Plaintiff to have "trust issues" with Defendant. Defendant replied, "Well then find yourself another lawyer," and hung up the phone.

52.  Defendant later that day (February 20, 2020) contacted Mrs. Renee Morgan and told her that "he wanted John to fire him."  Mr. John Morgan declined to fire Defendant, and instead sought to persuade him to commit to the defense of the referenced case as he was legally and ethically obligated to do (note:  Finally, in October 2020, Plaintiff's brother sought to fire Defendant, but then Defendant refused to relinquish control of the case as described infra).

### 4.   Withdrawl of Bond Review Motion; Psychiatric Competency Evaluation

53.  Although Defendant ostensibly filed a motion for a bond review hearing in the referenced case, he withdrew that motion at the hearing on March 9, 2020, and instead motioned for a psychiatric evaluation.

54.  An evaluation report issued on June 17, 2020, by Dr. Elizabeth Wheeler, concluded explicitly that Mr. John Morgan was "competent to stand trial."

55. Only one week later, On June 24, 2020, Defendant informed Plaintiff of his intent to have a second psychiatric evaluation ordered (see also paragraphs 62 and 69).

56. Defendant took no action to argue for Mr. Morgan's release on bond, and the referenced case was repeatedly continued and delayed, and at the time of this filing, Mr. Morgan has been in pretrial incarceration for 30 months and is still awaiting and demanding a trial.

### 5.   Withholding Discovery

57. On April 4, 2020 and May 3, 2020, Mr. Morgan reported to Plaintiff that he still had not received any discovery files which he had repeatedly requested from Defendant, and that he was given only illegible thumbnail images of some text messages. Mr. Morgan continued to complain on jail phone calls and in handwritten letters to Plaintiff, through late June 2020 that he had not received full discovery, such as requested audio and video, transcripts from preliminary and grand jury hearings, or text message and phone records, except for illegible thumbnail images of some text messages.

58. Plaintiff sent three emails to Defendant during May and June of 2020, in which she requested and provided information relevant to the referenced case, including providing screen prints from both courts containing the rape indictment records, and information helpful to impeaching the witnesses. Plaintiff requested that the Defendant file a motion to dismiss all charges. No response was received

59. In addition, Plaintiff's brother sent several hand-written letters to Defendant, dated April 14, 2020, June 11, 2020, and August 10, 2020, and sent copies to Plaintiff, in which he made requests for discovery, and for a bond review hearing, and for a motion to dismiss the case. No response was received.

### 6   Attempt to Withdraw as Counsel; Blaming Assistant

60. On June 22, 2020, Ms. Kate O'Brien from Defendant's office phoned Plaintiff and unexpectedly announced that she had a check for a partial refund of the retainer fee, which she was mailing to Plaintiff, and that "Mr. Broccoletti was filing a motion to withdraw." Plaintiff was upset by this, and responded by stating that defense counsel was not permitted to withdraw without good cause, and expressed that Plaintiff's brother very much wanted and needed

Defendant's experience and expertise in the referenced case.  No check was received in the mail and nothing more was ever mentioned about this incident.

61.  Two days later, on June 24, 2020, Defendant phoned Plaintiff and stated that he had terminated the employment of Ms. Campbell, and blamed her for the many months of non-response.  He offered a perfunctory acceptance of responsibility, and said that "several packets were delivered to John in the past couple days," and that "materials were all now delivered, except for medical records."  However, Mr. Morgan reported several days later that only a portion of the Discovery was delivered, while material Discovery materials including text messages in legible print, complete Axios body camera video records, and complete record of the 911 call, were still withheld by Defendant.

### 7.  Intent to Seek Incompetency Opinion

62.  In the same conversation on June 24, 2020, Defendant then remarked that, in a recent letter received by Defendant from Mr. Morgan, "John was upset" and "very rude," and further stated that he (Defendant) was "not a servant, I'm a professional."  He then stated that he was going to have John re-evaluated for competency to stand trial (though Dr. Wheeler's report declaring Mr. Morgan as competent to stand trial had just been released only one week before, on June 17, 2020, as described in paragraph 53-55).

63.  On September 2, 2020 Defendant motioned for an order for a second psychiatric evaluation.  As described infra, Dr. Wheeler, in this second evaluation, conducted three months after the first one, changed her previously issued opinion, and declared Mr. Morgan incompetent, which caused the referenced case to be continued while Mr. Morgan has remained incarcerated, for more than another six months, and continuing to present.

### 8.  August 2020 Emails Between Plaintiff and Defendant Regarding Rape Indictment

64.  On August 11, 2020, Plaintiff sent an email to Defendant, again stating her concern about the rape indictment, and requesting documentation specifying the charge to prove it was not "intent to rape" as seen on the public record.  Defendant again denied the reality of the rape indictment, by his reply that what showed on the courts' websites had "NO legal significance,"

that the indictment "tracks the statutory language," and that "the grand jury indictment is the charge and there is nothing further I can send you."

65. On August 12, 2020, Plaintiff argued further in the email thread, and asked, "does one go to trial regarding an entire statute, or a specified criminal charge?"  Defendant responded in the email, "we go to trial on the indictments that have been sent to you."  Those indictment papers contain the broad umbrella 18.2-90 statute, without specifying the charge (Exhibit 3).

66. On August 13, 2020, Plaintiff again emailed Defendant, and argued her belief in the reality of the sexual charge viewable on the courts' websites, and that such a charge would put her brother on the sexual predator list, which "is a non-starter," and "indicates malfeasance by the accusers."  Defendant replied, "Please go see a lawyer where you live.  Have him explain it to you."

### 9.    Defendant's Letter Regarding Prosecutor's "Language" in the Rape Charge/Indictment

67. Five days later, On August 18, 2020, Defendant sent a letter to Mr. Morgan (and emailed a copy to Plaintiff), in which Defendant conveyed the content of a conversation he had with the prosecutor, Commonwealth's Attorney Ms. Shannon Osbourne.  This letter seems to acknowledge the rape charge where it states that the Commonwealth's Attorney had "agreed to strike the language of rape, robbery, etc." and "would leave the indictment alleging 'intent to murder.'"  However, the significance of this admission was ignored, and the same harsh plea deal that had been on offer and had been refused since 2019 was restated (Exhibit 4).

68. In response, Mr. Morgan continued to refuse any plea deal and to demand a trial.

### 10.    Pursuit of Mental Incompetency Declaration

69. On September 2, 2020 Defendant motioned for an order for a second psychiatric evaluation of Mr. Morgan, but now stated as grounds for this request that recently acquired medical records indicated that Mr. Morgan had sustained a traumatic brain injury in May of 2019, despite Defendant' previous statements on June 24 that he was ordering a second evaluation because Mr. Morgan had been "rude" to him (as described above in paragraphs 53 through 55 and 62,63).

70. By this time, Mr. Morgan had decided to fire Defendant, and wrote a letter to the court requesting so. However, as described infra, this letter was received by the court on October 11, 2020, two weeks after Mr. Morgan had been declared incompetent to stand trial in a controversial opinion (as described supra).

### 11.     Refusal To Withdraw And Refusal To Be Fired

71. On December 17, 2020, Plaintiff phoned Defendant's office and spoke with Ms. Kate O'Brien. Plaintiff indicated confidence in her brother's competence, and her intent to fire Defendant, as Plaintiff is the one who hired him initially and Plaintiff has Power of Attorney including Medical Power of Attorney for her brother. Ms. O'Brien replied, "at this point, James represents John," and that Plaintiff would "need another attorney to fight for that." Plaintiff requested a copy of the mental competence evaluation from the Defendant, but Defendant refused.

72. Plaintiff has contacted more than twenty attorneys seeking representation in any and all of these matters, and every single one has declined. Several have referenced Defendant's established position in the legal community as at least part of the reason for declining.

73. On December 22, 2020, Plaintiff submitted to the court of the referenced case a document of her own creation, styled as a "motion," requesting the court to grant a stay of proceedings until an independent review of the totality of the case was conducted. The judge at the hearing on that date reviewed Plaintiff's petition, entered it into the case file as an official exhibit, and stated that he was going to "look into this myself," but also stated that Plaintiff is not allowed to file motions, and granted the request of the lawyers to declare Mr. Morgan incompetent and order him to undergo six months of mental competency "restoration."

74. Through his own demonstrated competency, Mr. Morgan requested to be transferred to a mental hospital, because he was so desperate to escape the horrors of the Hampton Roads Regional Jail.

75. After six months at Eastern State Hospital in Williamsburg, Virginia, Mr. Morgan was released back to that jail where he languishes to this day.

### 12.    Refusal to Allow Independent Psychiatric Evaluation

76.  On November 1, 2021, Plaintiff contacted an independent psychiatric evaluator, Dr. Neil Blumberg, who is highly regarded and qualified, requesting his professional service regarding a psychiatric evaluation aside from Defendant's choice of providers.  Dr. Blumberg stated that he "would be happy to get involved," but that the cooperation of Defendant, as attorney of record, was required.

77.  On November 5, 2021, Dr. Blumberg informed Plaintiff that Defendant had refused to allow his psychiatric services, and had refused to consider his qualifications, by declining a copy of his CV.  The doctor stated that there was "not much a doctor can do" in this situation.

78.  On Thursday November 11, 2021, Plaintiff sent email to Defendant, in which she again tried to fire Defendant, citing her General Durable Power of Attorney for her brother, her Medical Power of Attorney for her brother, and the fact the she was the one who paid Defendant. Defendant refused to withdraw counsel, stating in his November 12 reply email: "Until John is restored to competency the court will take no action regarding his counsel status."

### 13.    Ongoing Harm

79.  After 22 months under Defendant's oppression, Plaintiff's brother remains in dangerous, horrible conditions in extremely restrictive incarceration at the notorious Hampton Roads Regional Jail, where he has been subject to beatings by gang members, solitary confinement, and contraction of the COVID-19 virus;  he has no access to the internet, and recently, even written correspondence is effectively denied.

80.  Plaintiff continues to be her brother's primary outside support person, managing all of his affairs, providing him with financial support, and continuously seeking legal or other assistance.  Frustration, distress, and fear continue to oppress Plaintiff and her brother, and there is no end in sight.

### IV.    Statement of Claim

### FIRST CAUSE OF ACTION: FRAUD

81. Plaintiff repleads, realleges and incorporates by reference paragraphs 1 through  80, inclusive, as though fully set forth herein.

82.  Defendant intentionally, knowingly, and actually defrauded Plaintiff by means of false pretenses which induced Plaintiff to pay Defendant $10,000, with another $5,000 due before trial, for professional legal defense of Plaintiff's brother in a serious criminal case.

83.  At the time the Defendant made his offer of representation, Defendant knew that he had no intention to provide effective counsel to Mr Morgan in the referenced case, or to expose the apparent wrongdoing of the accusers and/or the prosecutor's office and/or other court officers.

84.  Defendant misrepresented existing known facts, including his intentions.  After collecting money, Defendant outrageously reversed and denied all his previous representations.

85.  Plaintiff was justified in relying on Defendant's misrepresentations because Defendant is a well-known, highly regarded attorney in Virginia; in fact Defendant appeared on the cover of the August 2019 issue of the Virginia Lawyer magazine published by the Virginia State Bar, in which a profile piece described him as "one of Virginia's foremost defense attorneys."  In addition, Defendant made persuasive statements about his knowledge of the referenced case.

86.  Defendant then knowingly exploited his position of power to deprive Plaintiff of truth and justice, and continued to deceive, bully, and gaslight Plaintiff, and to abuse his authority to steamroll over Plaintiff's concerns, and to actually *harm,* rather than help, Plaintiff's brother, by negligently and intentionally causing her brother's continued wrongful pretrial incarceration in a dangerous facility where he has suffered beatings and solitary confinement, all of which has caused Plaintiff severe emotional distress.

87.  Defendant maliciously intended Plaintiff to rely on his false misrepresentations as to his familiarity and intentions with respect to the referenced case, as described supra, to induce her to to pay him a significant sum of money, and give him the incredible power and authority of representation of a beloved brother in the defense of a criminal case, and Plaintiff did rely on such false misrepresentations in doing so, to her (and her brother's) severe detriment.

88.  Defendant's fraud and negligence has caused Plaintiff to work nearly full time to support her brother financially, emotionally, and legally, for almost two years and continuing to present.

89. As a direct and proximate result of Defendant's actions against Plaintiff, as alleged above, Plaintiff has suffered special damages including but not limited to money paid to Defendant, opportunity loss of wages, and benefits, plus consequential damages in an amount to be proven at time of trial, and potential legal fees, in excess of the minimum jurisdictional requirements of this Court.

90. As a further direct and proximate cause of Defendant's actions against Plaintiff, as alleged above, Plaintiff has suffered and continues to suffer general damages including but not limited to significant and enduring emotional distress including humiliation, mental anguish and physical distress, injury to mind and body, in a sum to be proven at time of trial, in excess of the minimum jurisdictional requirements of this Court.

91. Plaintiff is further entitled to prejudgment interest in an amount to be shown at trial.

92. Defendant's gross misrepresentations to Plaintiff resulted in severe emotional distress to Plaintiff. Defendant's actions were fraudulent, malicious and oppressive. Plaintiff is thus entitled to and herein seeks punitive and exemplary damages from Defendant, in an amount according to proof at trial, to punish Defendant and deter Defendant and others from engaging in similar future conduct.

## SECOND CAUSE OF ACTION: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

93. Plaintiff repleads, realleges and incorporates by reference paragraphs 1 through 88, inclusive, as though fully set forth herein.

94. Through Defendant's outrageous conduct and intentional fraud as described herein and above, and continuing to the present, Defendant acted with a reckless disregard for the probability to cause Plaintiff humiliation, mental anguish, and substantial and enduring emotional distress, with the knowledge that Plaintiff's emotional distress would thereby increase, and with a wanton and reckless disregard for the deleterious consequences to Plaintiff.

95. The extreme and outrageous nature of the defendant's negligence and intentional misconduct in a deliberate scheme to subvert the judicial process, has utterly destroyed Plaintiff's faith in our justice system, and has caused emotional harm, embarrassment,

humiliation and pain and suffering beyond what any ordinary or reasonable person should endure. Plaintiff was and is very fearful that that her brother may go to hard prison on a false rape charge where he may be subject to even more horrifying abuse, and might die in prison in an unthinkable manner. Plaintiff is horrified by the deceit and treachery taking place by trusted court officers.

96.   Defendant was aware of, knew or should have known, but disregarded, the risk of Plaintiffs emotional distress; a reasonable person would understand that a sister would be distraught that her beloved brother might go to hard prison on a preposterous false rape indictment due to lawyers' misconduct, and that a highly regarded defense attorney would intentionally defraud her on the matter. The defendant acted intentionally and this malicious act caused foreseeable emotional harm.

97.   Defendant's actions caused and still causes Plaintiff to continuously suffer from extreme distress, panic attacks, depression, confusion, anxiety, chronic worrying, nightmares, and insomnia; and have caused her to become socially withdrawn, and isolated from the people who are important to her. The controversy has severely damaged Plaintiff's family relationships, because the facts are so disturbing, that other family members can't accept them and/or wish to avoid the situation entirely. The salacious nature of the false rape indictment, and the prospect of her brother's disgrace by inclusion on the national "violent sexual offender registry," has deprived Plaintiff of friendly interaction in polite, decent society. Defendant's actions went beyond all possible bounds of decency, and were atrocious, reprehensible, and utterly intolerable in a civilized community.

98.   As a direct and proximate result of Defendant's actions against Plaintiff, as alleged above, Plaintiff has suffered special damages including but not limited to money paid to Defendant, opportunity loss of wages, and benefits, plus consequential damages in an amount to be proven at time of trial, in excess of the minimum jurisdictional requirements of this Court.

99.   As a further direct and proximate cause of Defendant's actions against Plaintiff, as alleged above, Plaintiff has suffered and continues to suffer general damages including but not limited to significant and enduring emotional distress including humiliation, mental anguish and

physical distress, injury to mind and body, in a sum to be proven at time of trial, in excess of the minimum jurisdictional requirements of this Court.

100. Plaintiff is further entitled to prejudgment interest in am amount to be shown at trial.

101. Defendant's gross misrepresentations to Plaintiff resulted in severe emotional distress to Plaintiff. Defendant's actions were fraudulent, malicious and oppressive. Plaintiff is thus entitled to and herein seeks punitive and exemplary damages from Defendant, in an amount according to proof at trial, to punish Defendant and deter Defendant and others from engaging in similar future conduct.

**THIRD CAUSE OF ACTION: NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

102. Plaintiff repleads, realleges and incorporates by reference paragraphs 1 through 88, and 92-97, inclusive, as though fully set forth herein.

103. Defendant negligently engaged in certain acts as alleged herein and above, which proximately resulted in injury and emotional distress to Plaintiff.

104. At all times material herein, Defendant knew, or in the exercise of ordinary care should have known, that unless Defendant refrained from or ceased to engage in the aforementioned fraud, that the conduct would subject Plaintiff to personal injury and emotional distress.

105. As a direct and proximate result of Defendant's actions against Plaintiff, as alleged above, Plaintiff has suffered special damages including but not limited to money paid to Defendant, opportunity loss of wages, and benefits, plus consequential damages in an amount to be proven at time of trial, in excess of the minimum jurisdictional requirements of this Court.

106. As a further direct and proximate cause of Defendant's actions against Plaintiff, as alleged above, Plaintiff has suffered and continues to suffer general damages including but not limited to significant and enduring emotional distress including humiliation, mental anguish and physical distress, injury to mind and body, in a sum to be proven at time of trial, in excess of the minimum jurisdictional requirements of this Court.

107. Plaintiff is further entitled to prejudgment interest in am amount to be shown at trial.

108. Defendant's gross misrepresentations to Plaintiff resulted in severe emotional distress to Plaintiff. Defendant's actions were fraudulent, malicious and oppressive. Defendant

intentionally performed an act or acts from which he knew or should have known that it a high probability of harm will result. Plaintiff is thus entitled to and herein seeks punitive and exemplary damages from Defendant, in an amount according to proof at trial, to punish Defendant and deter Defendant and others from engaging in similar future conduct.

## V. PRAYER FOR RELIEF

WHEREFORE, for the foregoing reasons, for fraud and intentional and negligent infliction of emotional distress, Plaintiff demands judgment against Defendant(s) awarding to Plaintiff compensatory damages in an amount to be determined at trial, but in any event, no less than $4,000,000, as well as punitive damages, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements; and such other and further relief as the Court deems just, equitable and proper.

Plaintiff also respectfully requests this federal court to:

> (i) refer the matters in this claim to the proper authorities for the investigation of unethical and illegal conduct by court officials in Chesapeake, Virginia;

> (ii) to take actions to completely expunge any and all records of any sexual charges against Plaintiff's brother from any and all public records including the CJIS database maintained by the FBI; and

> (iii) to take such actions as necessary to release Plaintiff's brother from Defendant's malicious power of control over his criminal defense and his wrongful pretrial incarceration.

## VI. JURY DEMAND

Plaintiff demands a trial by jury of all issues presented herein that are triable by a jury.

## VII. Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending,

modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

As a pro se litigant, I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Dated: January 11, 2022

Respectfully submitted,

*Julie Mor*

Julie Morgan, Pro Se
1913 Greenleaf Drive
Lexington, KY 40505
859-396-8670

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRIGINIA**
_Norfolk_ **DIVISION**

_Julie Morgan_
              Plaintiff(s),

v.

_James O. Broccoletti_
              Defendant(s).

Civil Action Number: _2:22cv 35_
                _TBD_

## LOCAL RULE 83.1(M) CERTIFICATION

**I declare under penalty of perjury that:**

**No attorney has prepared, or assisted in the preparation of** _Complaint for a Civil Case Alleging Fraud._
                                        **(Title of Document)**

_Julie Morgan_
Name of _Pro Se_ Party (Print or Type)

_Julie Mor_ (signature)
Signature of _Pro Se_ Party

Executed on: _01 / 14 / 2022_   (Date)

                            **OR**

**The following attorney(s) prepared or assisted me in preparation of** _____.
                                          **(Title of Document)**

_____
(Name of Attorney)

_____
(Address of Attorney)

_____
(Telephone Number of Attorney)
Prepared, or assisted in the preparation of, this document

_____
(Name of _Pro Se_ Party (Print or Type)

_____
Signature of _Pro Se_ Party

Executed on: _____ (Date)